IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROCK FERRONE,

    Appellant,,

    v.

NATALIE LUTZ CARDIELLO,

    Appellee.

14cv1456
**LEAD CASE**

14cv1462
**MEMBERCASE**

**ELECTRONICALLY FILED**

**MEMORANDUM OPINION**

This Court has written many times on the numerous appeals that have surfaced with respect to this Chapter 11 Bankruptcy. Presently before the Court, is Rock Ferrone's appeal of a Bankruptcy Court Order that determined that a particular asset – a building – was part of the bankruptcy estate and thus, subject to the sale of all of the Debtor's assets.

**I. Jurisdiction and Standard of Review**

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). A district court sits as an appellate court in bankruptcy proceedings. *In re Michael*, 699 F.3d 305, 308 n.2 (3d Cir. 2012).

The standards of review which apply to this case are as follows:

First, this Court cannot disturb the factual findings of a bankruptcy court unless they are clearly erroneous. *In re Gray,* 558 Fed. Appx. 163, 166 (3d Cir. March 7, 2014); *see also Accardi v. IT Litig. Trust (In re IT Group, Inc.)*, 448 F.3d 661, 667 (3d Cir. 2006). A factual finding is "clearly erroneous" if the reviewing court is "left with a definite and firm conviction that a mistake has been committed." *In re W.R. Grace & Co.*, 729 F.3d 311, 319, n.14 (3d Cir. 2011); *see also Gordon v.*

*Lewistown Hosp.*, 423 F.3d 184, 201 (3d Cir. 2005). Under the clearly erroneous standard, it is the responsibility of an appellate court to accept the ultimate factual determinations of the fact-finder unless that determination is either: (1) completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *DiFederico v. Rolm Co.*, 201 F.3d 200, 208 (3d Cir. 2000) (citations omitted).

Second, this Court exercises plenary, or de novo, review over any legal conclusions reached by the bankruptcy court. *In re Ruitenberg*, 745 F.3d 647, 650 (3d Cir. March 13, 2014); see also *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999).

Third, if the Bankruptcy Court's decision is a mixed question of law and fact, this Court must break down the determination and apply the appropriate standard of review to each. *In re Montgomery Ward Holding Corp.*, 326 F.3d 383, 387 (3d Cir. 2003). The Court should "apply a clearly erroneous standard to integral facts, but exercise plenary review of the court's interpretation and application of those facts to legal precepts." *In re Nortel Networks, Inc.*, 669 F.3d 128, 137 (3d Cir. 2011) (citation omitted).

Finally, this Court reviews a bankruptcy court's exercise of discretion for abuse. *In re Friedman's Inc.*, 738 F.3d 547, 552 (3d Cir. 2013). A bankruptcy court abuses its discretion when its ruling rests upon an error of law or a misapplication of law to the facts. *In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999).

**II. Factual Background**

The following facts are derived from Rock Ferrone's Brief. See doc. no. 3, p. 3-5.

Rock Ferrone ("Ferrone") is the sole shareholder of K-Cor, Inc., a Pennsylvania company that designs, manufactures, and sells newspaper equipment. In 1998, Ferrone purchased the land comprising an airstrip near Pittsburgh ("Rock Airport") through an entity known as Rock Airport

of Pittsburgh, LLC ("RAP"). In 2001, K-Cor, Inc. applied for, and received, a building permit to construct a new building for its business at Rock Airport. Also in 2001, Huntington Bank (f/k/a Skye Bank) loaned K-Cor, Inc. $144,000.00 to build this new building at Rock Airport.

After construction of the new K-Cor, Inc. building was complete, RAP agreed to transfer the building to K-Cor, Inc., and subdivided the Airport Property so that it could make such a transfer. K-Cor, Inc. made the loan payments to Huntington Bank and paid the insurance on the building.

### III. Procedural Background

The following information was obtained from docket entries filed with United States Bankruptcy Court for the Western District of Pennsylvania at case no, 09-23155-CMB. The docket entry numbers cited in this section correspond to case number 09-23155-CMB filed in the Bankruptcy Court's docket, unless otherwise noted.

In 2009, RAP filed for relief under Chapter 11 of the Bankruptcy Code. Bk. doc. no. 1. On October 22, 2012, RAP filed a motion to sell all or substantially all of its assets. Bk. doc. no. 26. On October 31, 2012, K-Cor, Inc. filed an Objection to the sale, claiming it owned its own building and argued that this particular building should not be sold as part of RAP's assets. Bk. doc. no. 230. This document noted, "[b]ecause Rock Ferrone is the principal of K-Cor, Inc. . . . and [RAP], no deed of conveyance was made between [RAP] and K-Cor, Inc. with regard to the parcel on which [K-Cor, Inc.] constructed the building . . . ". Id, ¶ 4.

On April 23, 2013, Bankruptcy Judge Fitzgerald entered an order approving the appointment of Trustee Natalie Lutz Cardiello. Bk. doc. no. 327. On June 10, 2014, the Trustee filed an Amended Motion Seeking Order Approving Sale of Property Free and Clear of All

Liens, Claims, and Encumbrances to Alaskan Property Management, LLC ("Alaskan") pursuant to an Asset Sale and Purchase Agreement which had been executed by RAP and Alaskan on March 6, 2014. Bk. doc. no. 683. On June 27, 2014, the Trustee entered an Order which set deadlines pertaining to the asset sale from RAP to Alaskan. Bk. doc. no. 742. Within that Order, the Trustee explicitly stated, "[a]ny response, including a consent to the Motion, shall be filed with the Clerk of the Bankruptcy Court and served on the Moving Party and their counsel not later than the last date fixed in the Notice of Sale for Filing Objections to the sale which is 8/11/14." Bk. doc. no. 742-2.

On August 21, 2014, the Bankruptcy Court held a hearing on the Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Natalie Lutz Cardiello (bk. doc. no. 683), and during that hearing, Ferrone asserted that K-Cor, Inc., not RAP, owned the building and argued that the building should not be included in the asset sale. See bk. doc. no. 929. At the end of the hearing, the Bankruptcy Court approved the Motion to Sell Property, and in so doing, determined Alaskan was a good faith purchaser of RAP's assets, but continued the evidentiary hearing as to the building which K-Cor, Inc. claimed it owned.

Pursuant to the Court's Order entered during this August 21, 2014 hearing, on August 26, 2014, K-Cor, Inc. formally filed an Objection to the sale of the building, asserting that RAP did not own the building, and thus, argued that the building should not be part of sale of assets to Alaskan. Bk. doc. no. 938. On August 28, 2014, the Trustee filed a Response to K-Cor, Inc.'s Objection. Bk. doc. no. 939. In her Response, the Trustee noted that on July 11, 2014, the Trustee's counsel served Ferrone and K-Cor, Inc. with a subpoena requesting the production of documents related to K-Cor, Inc.'s claim of ownership, but Ferrone failed to produce any documents in support of K-Cor's claim of ownership. Id. As noted above, Ferrone admitted in

4

at least one pleading, no deed transferring ownership from RAP to K-Cor, Inc. exists. See doc. no. 230, ¶ 4. The Trustee also noted that although Ferrone was asking for an extension of time so that his office administrator/witness could attend a hearing set for September 4, 2014, her testimony would serve no purpose in light of the complete lack of documentation confirming the transfer of ownership of the building from RAP to K-Cor, Inc. Bk. doc. no. 939.

On August 28, 2014, Ferrone filed a Motion for Reconsideration of the Bankruptcy Court's Order finding Alaskan to be a good faith purchaser of RAP's assets. Bk. doc. no. 943.

On September 4, 2014, Bankruptcy Court Judge Bohm held evidentiary hearings on (1) Ferrone's Motion to Reconsider whether Alaskan was a good faith purchaser, and (2) the building ownership issue. See bk. doc. nos. 989, 992, 1000 and 1001. That same date, September 4, 2014, the Bankruptcy Court entered an Order denying Ferrone's Motion to Reconsider Alaskan as a good faith purchaser. Bk. doc. no. 993.

On September 10, 2014, the Bankruptcy Court entered an Opinion (bk. doc. no. 1017) and Order (bk. doc. no. 1018), declaring that Ferrone only proffered self-serving testimony – and no documentary evidence – that the building at issue was ever conveyed from RAP to K-Cor, Inc. Ultimately, the Bankruptcy Court concluded that RAP was the owner of the building, and thus, subject to RAP's asset sale. Bk. doc. nos. 1017-1018.

On September 16, 2014, the Bankruptcy Court entered an Order Confirming the Trustee's Chapter 11 Plan (bk. doc. no. 1031), and simultaneously entered an Order granting the Trustee's Motion Seeking Order Approving Sale of Property Free and Clear of All Liens, Claims, and Encumbrances to Alaskan. Bk. doc. no. 1037.

On September 25, 2014, Ferrone filed an Emergency Motion to Stay the Sale of the Building at Issue, pending: (1) the Appeal of Bankruptcy Court Order no. 1018 concluding RAP

– not K-Cor, Inc. was the owner of the building; and (2) his Appeal of Bankruptcy Court Orders no. 1031 and 1037 concerning the Chapter 11 Plan Confirmation and the sale of property to Alaskan. See case no. 14-cv-1314 filed in the United States District Court for the Western District of Pennsylvania.

This Court issued an 11-page Memorandum Order on September 29, 2014, wherein it applied the 4-part preliminary in junction test, and in so doing, conducted a thorough analysis of the underlying sale-of-the-building and Alaskan- as-a-good-faith-purchaser matters, and denied the Stay requested by Ferrone. See case, no. 14-cv-1314 , doc. no. 4. On October 27, 2014, the United States Court of Appeals for the Third Circuit dismissed Ferrone's appeal of this Court's Order denying the Stay. See case, no. 14-cv-1314 , doc. no. 8.

**III. Discussion**

The Court begins this Opinion by noting that it has written several extensive Opinions this year in several related cases – see case nos. 14-cv-0085 (Court Opinion at doc. no. 6), 14-cv-0086 (Court Opinion at doc. no. 6), 14-cv-0091 (Court Opinion at doc. no. 12), 14-cv-1105 (Court Opinion at doc. no. 3), and 14-cv-1314 (Court Opinion at doc. no. 4), 14-cv-1195 (Court Opinion at doc. no. 8), and 14-cv-1196 (Court Opinion at doc. no. 6). At this point, the issue before this Court on the instant Appeal has been fully and thoroughly litigated before the Trustee, the Bankruptcy Court, this Court, and to a lesser extent, the Court of Appeals of the Third Circuit.

## A. Operation of Subsection 363(m) of the Bankruptcy Code

Of all the arguments raised by Ferrone – the Appellant, here – and the arguments raised by the Trustee – the Appellee here – the argument related to Section 363 of the Bankruptcy Code appears to be most relevant to this Appeal. The pertinent subsections of Section 363 read as follows:

> (a) In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.
>
> (b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, except that if the debtor in connection with offering a product or a service discloses to an individual a policy prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case, then the trustee may not sell or lease personally identifiable information to any person unless—
>
>> (A) such sale or such lease is consistent with such policy; or
>>
>> (B) after appointment of a consumer privacy ombudsman in accordance with section 332, and after notice and a hearing, the court approves such sale or such lease—
>>
>>> (i) giving due consideration to the facts, circumstances, and conditions of such sale or such lease; and
>>>
>>> (ii) finding that no showing was made that such sale or such lease would violate applicable nonbankruptcy law.
>
> [b](2) If notification is required under subsection (a) of section 7A of the Clayton Act in the case of a transaction under this subsection, then—

(A) notwithstanding subsection (a) of such section, the notification required by such subsection to be given by the debtor shall be given by the trustee; and

(B) notwithstanding subsection (b) of such section, the required waiting period shall end on the 15th day after the date of the receipt, by the Federal Trade Commission and the Assistant Attorney General in charge of the Antitrust Division of the Department of Justice, of the notification required under such subsection (a), unless such waiting period is extended—

(i) pursuant to subsection (e)(2) of such section, in the same manner as such subsection (e)(2) applies to a cash tender offer;

(ii) pursuant to subsection (g)(2) of such section; or

(iii) by the court after notice and a hearing.

(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

[(c)](2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

[(c)] (3) Any hearing under paragraph (2)(B) of this subsection may be a preliminary hearing or may be consolidated with a hearing under subsection (e) of this section, but shall be scheduled in accordance with the needs of the debtor. If the hearing under paragraph (2)(B) of this subsection is a preliminary hearing, the court may authorize such use, sale, or lease only if there is a reasonable likelihood that the trustee will prevail at the final hearing under subsection (e) of this section. The court shall act promptly on any request for authorization under paragraph (2)(B) of this subsection.

[(c)](4) Except as provided in paragraph (2) of this subsection, the trustee shall segregate and account for any cash collateral in the trustee's possession, custody, or control.

* * *

> (m) The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C.A. § 363.

With respect to Section 363, the Court of Appeals for the Third Circuit has held that sale authorized under Section 363(b) or Section 363(c), cannot be reversed or modified pursuant to Section 363(m) where doing so would affect the validity of the sale. See *Pittsburgh Food & Beverage, Inc. v. Ranallo,* 112 F.3d 645, 649 (3d Cir. 1997) (Chapter 11 debtor's appeal of asset sale approval to district court was moot because, due to debtor's inability to obtain stay pending appeal and subsequent sale of debtor's subsidiary's assets, district court could not have granted effective relief without affecting validity of sale).

The Court finds that *Pittsburgh Food & Beverage,* is controlling on whether Section 363 applies here, given that the *Pittsburgh* case is so factually similar to the case at bar. In the *Pittsburgh* case, Pittsburgh Food & Beverage ("PFB") appealed two district court orders dismissing its appeal from a bankruptcy court order which had approved a sale of assets of PFB's wholly owned subsidiary, L.E. Smith Glass Company ("Smith") to American Glass, Inc. ("American"). One of the appellees the *Pittsburgh* case was the trustee of PFB, Lawrence Ranallo.

Once the sale of the assets – including the sale of Smith, the wholly owned subsidiary of PFB – was approved, PFB (like Ferrone, here) filed a Motion with the Bankruptcy Court to stay

the sale of assets, (just like Ferrone did here). The Bankruptcy Court in *Pittsburgh* denied PFB's Motion. In this case, the Bankuptcy Court denied Ferrone's motion to stay.

In both the *Pittsburgh* case and the instant matter, the interested parties filed a motion with the District Court asking for a stay of the sale. In both cases, *Pittsburgh* and the instant matter, the interested parties were denied the stay of their respective sales by the District Court. See case no. 14-cv-1105, doc. no. 3; case no. 14-cv-1314, doc. no. 4. Finally, in both the *Pittsburgh* case and the instant case, the Trustees, filing as Appellees, argued the Appeals at issue should be dismissed in accordance with Section 363(m) of the Bankruptcy Code because providing the Appellants with the relief sought would indeed affect the validity of the sale.

Turning exclusively to the instant matter, the Court agrees with Appellee that Section 363(m) applies here and that if this Court were to grant Ferrone the relief sought by his appeal, the matter would affect the validity of the sale. This is clearly prohibited by statutory law and the Court of Appeals' interpretation of same.

However, Ferrone argues that subsection 363(m) does not apply (and thereby cannot be used to dismiss his appeal in this case) because a criterion that needs to be satisfied under subsection 363(m) cannot be met. See Appellant's Reply brief, doc. no. 6.

Ferrone argues that Alaskan was not a good faith purchaser of RAP's assets – good faith being a prerequisite under Section 363(m). However, the Court notes that this issue has been fully litigated and briefed before the Trustee, the Bankruptcy Court and this Court. See case nos. 14-cv-1195 and 14-1196. This Court has heard two appeals (case nos. 14-cv-1195 and 14-cv-1196) and two Emergency Motions to Stay the Sale (case nos. 14-cv-1105 and 14-cv-1314), all of which related, directly or indirectly, to whether Alaskan was a good faith purchaser. The Court incorporates by reference its Opinions in each of the two prior Appeals and the two

Emergency Motion docketed at case numbers 14-cv-1195 (doc. no. 8), 14-cv-1196 (doc. no. 6), 14-cv-1105 (doc. no. 3) and 14-cv-1314 (doc. no. 4). In sum, this Court notes (yet again) that there is <u>no basis</u> upon which this Court may disturb the Bankruptcy Court's finding of fact that Alaskan is indeed a good faith purchaser. Thus, the good faith criteria raised by Ferrone under Section 363(m) has been met.

Accordingly, this Court finds that Subsection 363(m) applies and as such, the Court further finds that the Court under *Pittsburgh Food & Beverage* is obliged to dismiss the Appeal.

### B. Ferrone's 14th Amendment Due Process Rights

Having determined this Appeal must be dismissed, the Court need not consider any of Ferrone's other arguments, with one possible exception – his claim that his Due Process Rights have been violated. It appears as though Ferrone is making both a Fifth and Fourteenth Amendment claim in this regard.

The Court begins by noting that due process certainly applies to bankruptcy proceedings. See *In re Lazy Days' RV Center Inc.*, 724 F.3d 418 (3d Cir. 2013). In *Lazy Days*, the Court of Appeals concluded that, "the Takings Clause under the Fifth Amendment only protects property rights as they are established . . . , not as they might have been established or ought to have been established." 724 F.3d at 425, citing *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 732 (2010).

Ferrone argues that the Bankruptcy Court denied him a request to present testimony "concerning MSA's prior efforts to take over the airport." In support of this argument, Ferrone suggests that the Bankruptcy Court, during one of the many hearings (but he does not specify which one) sustained MSA's objection to Ferrone's testimony concerning MSA's meeting with Ferrone's former real estate broker, CB Richard Ellis. In short, Ferrone claims that by sustaining

MSA's objection to Ferrone's [potential hearsay] testimony, Ferrone's due process rights were violated. The exclusion of hearsay testimony cannot form the basis of a due process rights violation.

In addition, Ferrone argues that the September 4, 2014 hearing, which was held to discuss the building ownership issue, should have been continued so as to enable his office administrator to testify. By not continuing that hearing to allow her to testify or to search for the documents before the hearing, Ferrone claims his due process rights were violated. However, the bankruptcy court subpoenaed any documentation concerning a transfer of ownership of this building months before the hearing date, and the administrator did not produce any documents in response to the subpoena. In addition, and as noted above, Ferrone admitted in a bankruptcy pleading that there was no documentation concerning the transfer of ownership of the building, which under Pennsylvania law and the Statute of Frauds could only be conveyed (and proven) via a writing. Thus, Ferrone's witness' inability to appear at hearing is of no moment.

Accordingly, this Court does not find either of Ferrone's Due Process arguments compelling, and finds that they certainly fall exceedingly short of overriding the Court's obligation to apply Subsection 363(m) of the Bankruptcy Code.

**IV. Conclusion**

Ferrone's appeal will be dismissed in accordance with 11 U.S.C.A. § 363(m), and the Court bases this Conclusion not only the brief analysis set forth above but on the more extensive, and related analyses conducted in case nos. 14-cv-1195 (doc. no. 8), 14-cv-1196 (doc. no. 6), 14-cv-1105 (doc. no. 3) and 14-cv-1314 (doc. no. 4). An appropriate Order shall follow.

                                           s/ Arthur J. Schwab
                                           Arthur J. Schwab
                                           United States District Judge

cc:       All Registered ECF Counsel and Parties